# FORM FOR USE IN APPLICATIONS
## FOR HABEAS CORPUS UNDER 28 U.S.C. § 2254

RECEIVED

Gerard David McCree, JR.,                2:06CV520-WHA

2006 JUN 12 A 8:49

**Name**

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA.

# 203840

**Prison Number**

Donaldson Correctional Facility

**Place of Confinement**

United States District Court ___Middle___ District of ___ALABAMA___

**Case No.** _____

**(To be supplied by Clerk of U. S. District Court)**

Gerard David McCree, JR., , PETITIONER

**(Full Name)   (Include name under which you were convicted)**

Warden Jones , RESPONDENT

**(Name of Warden, Superintendent, Jailor, or authorized person**
**having custody of Petitioner)**

and

THE ATTORNEY GENERAL OF THE STATE OF ___ALABAMA___

Troy King, Daniel Madison , ADDITIONAL RESPONDENT.

   (if petitioner is attacking a judgement which imposed a sentence to be
served in the <u>future</u>, petitioner must fill in the name of the state where the
judgment was entered.  If petitioner has a sentence to be served in the <u>future</u>
under a federal judgment which he wishes to attack, he should file a motion
under 28 U.S.C. §2255, in the federal court which entered the judgment.)

## PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN
## STATE CUSTODY

### INSTRUCTIONS--READ CAREFULLY

(1) This petition must be legibly handwritten or typewritten and signed by the
petitioner under penalty of perjury.  Any false statement of a material fact
may serve as the basis for prosecution and conviction for perjury. All
questions must be answered concisely in the proper space on the form.

N955

The Judicial Conference of the United States has adopted, effective 1/1/83, the 8½ x 11 inch paper size standard for use throughout the federal judiciary and directed the elimination of the use of legal size paper. All pleadings, etc. filed after 12/31/82 must be on 8½ x 11 inch paper, otherwise we cannot accept them.

(2) Additional pages are not permitted except with respect to the <u>facts</u> which you rely upon to support your grounds for relief. No citation of authorities need be furnished. If briefs or arguments are submitted, they should be submitted in the form of a separate memorandum.

(3) Upon receipt of a fee of $5 your petition will be filed if it is in proper order.

(4) If you do not have the necessary filing fee, you may request permission to proceed <u>in forma pauperis</u>, in which event you must execute the declaration on the last page, setting forth information establishing your inability to prepay the fees and costs or give security therefor. If you wish to proceed <u>in forma pauperis</u>, you must have an authorized officer at the penal institution complete the certificate as to the amount of money and securities on deposit to your credit in any account in the institution.

(5) Only judgments entered by one court may be challenged in a single petition. If you seek to challenge judgments entered by different courts either in the same state or in different states, you must file separate petitions as to each court.

(6) Your attention is directed to the fact that you must include all grounds for relief and all facts supporting such grounds for relief in the petition you file seeking relief from any judgment of conviction.

(7) When the petition if fully completed, <u>the original and two copies * must be mailed to the Clerk of the United States District Court whose address is</u>:

P.O. Box 711
Montgomery, Alabama 36101

(8) Petitions which do not conform to these instructions will be returned with a notation as to the deficiency.

**\*If you are proceeding <u>in forma pauperis</u>, only the original petition needs to be filed with the Court.**

PETITION

1. Name and location of court which entered the judgment of conviction under attack Fifteenth Judicial Circuit Court, Mont. County

2. Date of judgment of conviction October, 30, 2003

3. Length of sentence L.W.O.P. Sentencing Judge Tracy S. McCooey

4. Nature of offense or offenses for which you were convicted: _CAPital offenses of, CAPital Murder, Kidnapping, Robbery, In The First Degree,._

5. What was your plea?  (check one)
   (a) Not guilty  ( ✓ )
   (b) Guilty      ( )
   (c) Nolo contendere  ( )
   If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details: _____
   _____
   _____
   _____

6. Kind of trial:     (Check one)
   (a) Jury  ( ✓ )
   (b) Judge only  ( )

7. Did you testify at the trial?  Yes ( ✓ )  No ( )

8. Did you appeal from the judgment of conviction?    Yes ( ✓ )  No ( )

9. If you did appeal, answer the following:
   (a) Name of court _Court of Criminal Appeals_
   (b) Result _affirmed McCree's Convictions And Sentences_
   (c) Date of result _August, 20, 2004_
   If you filed a second appeal or filed a petition for certeorari in the Supreme Court, give details: _____
   _____
   _____
   _____

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any court, state or federal?   Yes ( ✓ )  No ( )

11. If your answer to 10 was "yes", give the following information:
    (a) (1) Name of court _Fifteenth Judicial Circuit Court Monts County_
        (2) Nature of proceeding _Petition For PostConviction Relief._
        _____
        (3) Grounds raised _effective assistance of counsel, (Conviction obtained By use of evidence obtained Pursuant To an unlawful arrest), Unconstitutional Failure of the Prosecution To disclose To The Defendant evidence Favorable To The Defendant,   The Claim of Innocent,_
        _____
        (4) Did you receive an evidentiary hearing on your petition, application or motion?  Yes ( )   No ( ✓ )
        (5) Result _Denied Without An Evidentiary Hearing_
        (6) Date of result _Trial Court Denial  7-27-2005_

(b) **As to any second petition, application or motion give the same information:**
   (1) Name of court *This ~ United States Dist. Court*
   (2) Nature of proceeding *1983 proceeding, Civil*
   (3) Grounds raised *Conviction obtained By way of Willie Turner's Perjured Testimony, Conspiracy, equal Protection Claims, abuse of process.*

   (4) Did you receive an evidentiary hearing on your petition, application or motion?  Yes ( )  No (✓)
   (5) Result *Defendant Turner, were Granted Judgmen[t]*
   (6) Date of result *May - 16 - 06*

(c) **As to any third petition, application or motion, give the same information:**
   (1) Name of Court *Alabama Supreme Court*
   (2) Nature of proceeding *Petition for Certeorari To the Court of Criminal Appeals.*
   (3) Grounds raised *effective assistance of counsel, Conviction obtained By use of evidence obtained Pursuant To an unlawful arrest, unconstitutional failure of the Prosecution To disclose To the Defendant evidence favorable To The Defendant, The Claim of Innocent*

   (4) Did you receive an evidentiary hearing on your petition, application or motion?  Yes ( )  No (✓)
   (5) Result *This Court exercise Supplemental Jurisdiction of State Clai[m]*
   (6) Date of result *MAY - 16 - 06*

(d) **Did you appeal to the highest state court having jurisdiction the result of any action taken on any petition, application or motion:**
   (1) First petition, etc.     Yes (✓)  No ( )
   (2) Second petition, etc.    Yes ( )  No (✓)
   (3) Third petition, etc.     Yes (✓)  No ( )

(e) **If you did not appeal from the adverse action on any petition, application or motion, explain briefly why you did not:** *This Court has dismissed The Petitioner State Law Claims without Prejudice Pursuant 28 u.s.c. 1367(c)(3 This Court has ordered To exercise Supplemental Jurisdiction over any of The Petitioner's State Law Claims', This Petition Filed.*

12. State <u>concisely</u> every ground on which you claim that you are being held unlawfully.  Summarize <u>briefly</u> the <u>facts</u> supporting each ground.

> CAUTION:  In order to proceed in the federal court, you must ordinarily first exhaust your state court remedies as to each ground on which you request action by the federal court.  As to all grounds on which you have previously exhausted state court remedies, you should set them forth in this petition if you wish to seek federal relief.  If you fail to set forth all such grounds in this petition, you may be barred from presenting them at a later date.

For your information, the following is a list of the most frequently raised grounds for relief in habeas corpus proceedings.  Each statement preceded by a letter constitutes a separate ground for possible relief.  You may raise any grounds which you may have other than those listed if you have exhausted all your state court remedies with respect to them.  However, <u>you should raise in this petition all available grounds</u> (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

If you select one or more of these grounds for relief, you must allege facts in support of the ground or grounds which you choose.  Do not check any of the grounds listed below.  The petition will be returned to you if you merely check (a) through (j) or any one of these grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.

(b) Conviction obtained by use of coerced confession.

(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure, [where the state has not provided a full and fair hearing on the merits of the Fourth Amendment claim].

(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest, [where the state has not provided a full and fair hearing on the merits of the Fourth Amendment claim].

(e) Conviction obtained by a violation of the privilege against self-incrimination.

(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

(g) Conviction obtained by a violation of the protection against double jeopardy.

(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.

(i) Denial of effective assistance of counsel.

(j) Denial of right of appeal.

A. <u>Ground one</u>: Conviction obtained By use of evidence obtained pursuant to an unlawful arrest. supporting facts (tell your story <u>briefly</u> ~~without~~ citing cases or law):

The courts Records are devoid In evidence of the Showing how the arresting Officers made improper Promises with Witnesses In A agreement to Help take care Of two Misdemeanor warrants their Witness currently had on Him, In exchange for a statement implicating the Petitioner - mccree. it Shows after their settled agreement Mccree were than charged with the said capital Murder, In violation of mccree's Fourth Amendment Rights to the united States Constitution, petitioner prays that this court grants petitioner relief to which He May Be entitled upon a probable cause determination.

B. <u>Ground two</u>: the facts establish that Petitioner is innocent of the crime for which He was convicted, supporting facts (tell your story briefly without citing cases or law): upon Being convicted for said capital Murder, kidnapping, Robbery, In the First degree,. the Records Shows (no) witnesses at trial giving a testimony (stating) The Petitioner got Inside the victims vehicle after Shooting the victim while the victim was Inside the vehicle, which He got Into the victims vehicle an drove off In it while the victim were still Inside the vehicle, committing the kidnapping and Robbery as alleged By the state.,

C. Ground three: Conviction obtained By the unconstitutional failure of the Prosecution to disclose to the Defendant evidence favorable to the Defendant:

Supporting fact (tell your story briefly without citing cases or Law):

Upon the victim Being shot and taken to another area In his car, By his shooter, the shooter's or someone else who's name is unknown do to it not Being disclose to the Petitioner, fingerprints were found Inside the victim's car on "Driver will" of the vehicle, these fingerprints are unknown But were given to the Petitioner's Jury Which cause a Improper Influen on the Petitioner,

D. Ground four: Denial of effective assistance of counsel.

Supporting FACTS (tell your story briefly without citing cases or law):

The Records will show that the counsel's deficient performance prejudiced the petitioner in his Jury trial. As which the Jury recommended the death penalty should be given to petitioner. the Jury did Not hear OR seen the evidence of the arresting officers made however the agreement with witnesses to charge the petitioner with the murder of the victim, counsel's did not questioned arresting officers of their unlawful conduct to prove petitioner innocent of the crime for which petitioner were convicted. The Judge sentenced the petitioner to life without parole.

13. If any of the grounds listed in 12A, B, C, and D were not previously presented in any other court, state or federal state briefly what grounds were not so presented, and give your reasons for not presenting them: _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

14. Do you have any petition or appeal now pending in any court, wither state or federal, as to the judgment under attack?    Yes ( )  No (✓)

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(a) At preliminary hearing Pate DeBarDeleBen, 2835 Zelda Road Montgomery, Al 36106

(b) At arraignment and plea Pate DeBarDeleBen, 2835 zelda Rd. Mont. Al. 36106

(c) At trial Pate DeBarDeleBen,

(d) At sentencing Pate DeBarDeleBen,

(e) On appeal Douglas C. Freeman, 5381 Vaughn Road Montgomery, Al. 36116

Jurisdictional Grounds of the Subject Matter to review a Judgment of a State Court, holding Under 28 U.S.C. 2254

1. By a person in custody pursuant to a Judgment of a State Court, for a determination that Such custody is in violation of the Constitution, Laws, or Treaties of the United States.—

2. The adjudication of the claims By the Trial Court—resulted in a decision that was Contrary to, or involved an unreasonable application of, cleary established federal law, as Determined By the supreme Court of The united States; or resulted in a Decision that was Based on an unreasonable Determination of the facts in light of the evidence presented in the trial Court Proceedings...

3. The claims relies on—the facts underlying the claims, and is sufficient To establishing By the clear and convincing evidence that But for Constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense...

4. The Jurisdiction of this Court is invoked under this Court's <u>ORDER</u> To exercise Supplemental Jurisdiction over any of the petitioner's State Law Claims, (See) Gerard McCree, vs, Willie Turner 2:03-CV-01147-WHA-SRW, Document #: 39-1' Date Filed: 05/16/06,

5. Circumstances exist that render Such Process Ineffective To protect The Rights of The applicant . . .

6. Following Claims Does Not Constitutes any of the Claims alleged IN The lawsuit at, Gerard McCree vs. Willie Turner, 2:03-CV-01147-WHA-SRW,

As Were Alleged IN The iNdictment

on A charge of capital murder for
Said - Shooting Travis Moore With a
firearm fired OR otherwise used from
outside a Vehicle While said
Travis moore WAS INSide Motor
Vehicle IN Violation of Section
13A-5-40 (a)(17) of The code of AlABAMA,

As Were added to INdictment :
KidNapping ANd RoBBeRy, IN The First
Degree..

Conviction obtained By use of Evidence obtained Pursuant To an unlawful arrest.

Statement of The Facts: On June, 30, 2001, The petitioner McCree were in the area of a Home he sometimes stays at, as (8) other's were thereto one Being The victims girlfriend who stayed with The victim Travis moore The victims girlfriend Linda Barnes were there at the home with the other's when Travis moore Drove up in his vehicle and got out an Begin Fighting with Linda Barnes, and telling her To go home, Linda Barnes Droved off In her vehicle, Travis Moore Than Begin with arguments with The other Individuals, While McCree asked Moore To get Back In The Car and go, shots were Fired From The home, Moore had got Shot In The right side of his head while outside of his vehicle, Moore Failed To The Ground, got up and got Into

his car and Droved off To where
his car came to a stop Down the
street, Individuals were runing around
the area one Individual went over
and got Into The victims car and
Droved off with the victim still
Inside, within the Next hour from
The time of the shooting Mccree

had got a phone call from Linda Barnes
on his cellphone, Mccree were at
home at the time Barnes the victims
girlfriend were at a motel room on
air Base Boulevard, Maxwell Inn,
Barnes aked mccree To come over
To The motel room where she was,
mccree gave the Information to
Barnes, stating that her Boyfriend
had Just got shot, And the Guy Just
got In his car and Droved off with
your Boyfriend and his car, Barnes
again asked mccree to come over
which Mccree went to the Motel
within that hour, when Mccree got

To The MoteL room Barnes Stated
That She had Called Travis Moore's
mother and told her that a friend
told her that travis had got Shot,
Barnes also Stated to Mccree that
the Detective's had Just left the
MoteL room talking to her and asked
her did She knew about her Boyfriend
getting Shot or knew Where travis
Moore Could Be found, She told
Mccree that She told them that She
Just Called his mother asking The
Same Question's, She Said after
The Detectives questioned her they
Left.

Barnes Statement's to the Detectives
aT The Maxwell INN MoteL, Could
Be Found IN The ReCord OF The
DisCovery Page 82.,

Those facts Shall Show that
Linda Barnes Did Not have The
Knowledge of The Victim getting
Shot, Do To Not Being In The
area at The time of The Shots —
on June, 30, 2001, facts Shall
Show that Barnes got her
Information from McCree, who
Witnessed her Boyfriend getting
Shot. Linda Barnes Statements
To The Detectives the Night of the
Shooting. (again) Could Be Found
In Case Discovery Page 82.

Supporting facts —
To The Claim: on June, 21, 2001

The Day after Travis Moore had got
Shot, McCree got a PhoneCall from
His mother, as She Stated To McCree
That He McCree got To go over To
The Police DepaRTment Do To
Having warrants of capital murder

however Mccree In fact went To The police department Do To The Said warrants, at the police department one of the Detectives asked Mccree If he would like to give a Statement or would Just want to Be taking To The montgomery County Jail? Mccree found that he should Just Be Taken To The County Jail. (County Facility while there mccree were Being represented By Attorney pate DeBaRdeLeBen upon the Attorney filing motions for Discovery, The Discovery were Served To The Attorney, Copy of the Discovrey were Served to mccree From His Attorney Mccree Noticed the evidence favorable To Him and went over the evidence with his Attorney. The Records will Not Show any of these Supporting facts were — argued at trial By mccree's Attorney Supporting facts: The Record Shows evidence of the arresting offices IN fact went Into a-agreement with Their witnesses Before Such

Warrants could result against McCree and the said capital murder offense.

Fact: Eric Wilson, who currently had misdemeanor warrants on Him had spoken to Detective S.E. Wilson, is what Eric Wilson told another Detective, Eric Wilson also told that Detective that he was going to call Detective S.E. Wilson and tell him all of the Information he knew about this case IF They would cooperate and help take care of the two misdemeanor warrants he currently had on him, (It shows that the Detective stated To Eric Wilson In regards To what He Eric Wilson were asking for)

I advised Mr. Wilson that IF he were willing to cooperate with us and provide us with truthful information that would help solve this case, we would see what we could do to help get him time to pay or workout some type of program To Take care of the two Misdemeanor

Warrants he currently had on him,

evidence shows that after Eric Wilson and the Detective spoken, Eric Wilson's Brother Darria Wilson than stated To The Detective that he seen Mccree shot the victim, It show that Darria Wilson also stated to the Detective that Detective S.E. Wilson IS a friend of his and his Brother, and that he feels more comfortable speaking to him.

Evidence show that they agreed to go to headquarters at that time, During the statement giving at the headquarters It shows that Mr. Wilson told Detective Wilson that he in fact saw Gerard Mccree shoot the victim while the victim was inside the victim's vehicle,

It shows at that time Mccree were than charged with the capital Murder of Tarvis Moore,

Herein Following
EXHIBIT
A

The To Pages From case Discovery pages 78-97, Case #CC-03-335

13993 (171)

that Mr. Wilson drives a big truck that he hangs out at the hair shop on Highway 80.

This writer advised Detective Naquin of this information, and he asked me to go to the hair shop and see if I could make contact with that subject.

At 1255 Hours, I went to the hair shop on Highway 80, which is called the Hair Port, and spoke to black male Eric Wilson who advised he is Darria Wilson's brother. Eric Wilson stated he had already spoken to Detective S. E. Wilson and given him a phone number and advised him that he was going to call him and tell him all of the information he knew about this case if we would cooperate and help take care of two misdemeanor warrants he currently had on him. I advised Mr. Wilson that if he was willing to cooperate with us and provide us with truthful information that would help solve this case, we would see what we could do to help get him time to pay or workout some type of program to take care of the two misdemeanor warrants he currently had on him. While talking to Mr. Wilson, his brother arrived at 1300 Hours and identified himself as Darria Wilson, DOB 8/19/64, and got in the car with me. Eric Wilson advised me that one of the black males working inside his business was a girlfriend of Gerard McCree and if she saw us talking to them she would probably call him and let him know and for this reason I went down the road with Darria Wilson to speak to him. While going down the road, I got several pages from 286-1000 for 911, and it was later determined that this was Eric Wilson calling to let us know that the black female had, in fact, seen us drive off and she was asking him why Darria had left with the police and he was afraid she was going to call Gerard. While riding down the road with Darria Wilson, he advised that the Hair Port is the family business. He stated that we could make contact with him there if we could not locate him at the house. He stated that on the night that this happened he was out in his yard and he saw McCree outside at the victim's girlfriend's car talking to her. He stated that the victim pulled up and there was an argument out in the roadway. He stated that the victim got back in his car and started to drive off and McCree pulled a gun out and shot the victim. He stated that he was hesitant to cooperate because McCree is nothing but trouble and had been arrested several times and continued to get off without anything happening to him and he was afraid that he would get off this time and that if he stuck his neck out that McCree and McCree's friends would possibly try to kill him and hurt his family for that reason it made him very nervous to be cooperative with us. I advised him that we would do everything we could to ensure that this would not happen. He stated that Detective Wilson is a friend of his and Eric Wilson, his brother, and that they had known Detective Wilson for several years. He stated that he feels more comfortable speaking to Detective Wilson, and I advised him that I would have Detective Wilson meet him at headquarters at 1400 Hours if he would agree to come to headquarters at that time. He stated he would come to headquarters and talk to Detective Wilson at 1400 Hours, and I dropped him off around the side of the business

97

13993 (115)

I should contact her when processing of the victim's vehicle was completed so that she could pick it up. The victim's father was also present during the meeting and was recognized by Detective Barnett. Detective Barnett had arrested and charged his other son in the Jack's Quick Shop murder that occurred a month or so ago.

After the briefing with the victim's family, they were released from Police Headquarters after I answered any questions they may have and I then spoke to Detective Wilson, who advised that he had taken a taped statement from Darria Wilson, black male, DOB 8/19/64, 4001 Luther Street, PX 288-3433. During the statement Mr. Wilson told Detective Wilson that he, in fact, saw Gerard McCree shoot the victim while the victim was inside the victim's vehicle. He explained that he has known Gerard McCree for an extended period of time and positively identified McCree as the individuals that committed the shooting. Details of the interview and identification will be contained in Detective Wilson's supplementary report.

At 1542 Hours, I secured a warrant charging Gerard McCree with the Capital Murder of Tarvis Moore. At this point we were still unable to locate the victim's girlfriend, Linda Barnes, and I then had Detective Barnett complete and distribute lookouts, the first being a wanted poster for Gerard McCree, in which he was listed as wanted for Capital Murder, and the second being a lookout for Linda Barnes, who was wanted for questioning in regards to the murder investigation. Lieutenant Gantt then advised this writer that he had found out that after the police responded to the shots fired and possible shooting at Gateway and Riviera on 6/20/01, news media individuals responded to the area and subsequently interviewed several witnesses. Lieutenant Gantt had found out from one of the TV Stations that during their interviews, they were told by one witness, who was unidentified, that the victim's girlfriend, Linda Barnes, was, in fact, at the residence at 2969 Gateway Drive when the shooting occurred and that in addition to that the suspect, Gerard McCree, was at one point prior to the shooting seated in a vehicle with Linda Barnes. Montgomery Police Department computer records listed her as Linda Barnes, DOB 12/10/61, with numerous addresses, including 122 Broadway Street, 2440 Lower Wetumpka Road, 3945 Brewer Road, which is also the address of the victim, Tarvis Moore, 2402 East Sixth Street, 1639 Northgate Drive, and 1800 Dixie Court. She had an arrest on 2/28/01 for Possession of Marijuana and had received a ticket for No Driver's License and also an arrest for Carrying a Pistol without a Permit. She also had several pawned articles listed in the computer system. A vehicle registered to her in the computer system was listed as a 1993 Dodge Dynasty, blue in color, tag #3BG3734, and was registered to Linda Barnes at 122 Broadway Street.

At approximately 1710 Hours, while doing intelligence information on Linda Barnes and Gerard McCree, Lieutenant Gantt advised that he had spoken to Sheriff Marshall over the phone, who advised that he

78

## argument

upon Petitioner establishing the unconstitutional deprivation resulting from the arresting officers violating McCree's Rights under the Fourth Amendment holding the Right of the people to be secure in their persons, house, papers, and effects, against unreasonable searches and seizures, shall NOT be violated, and No warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing The Place to be searched, and the Persons or Things to be seized. however as alleging under Common-Law False arrest, the Detective's knew that they were misusing a Legal Proceeding under ALABAMA Proceeding 13.1(b)(c) ALABAMA Rules of Court, —

Information, An Complaint, however the evidence IN exhibit A shows the Detective's Filed charges upon petitioner in Bad Faith, Which made on oath, signed, and presented

To The court By the district attorney, pursuant to Rule 2.2.(e) without action By the Grand Jury, which He who Misused the legal proceeding resulting IN a UNCONSTITUTIONAL deprivation By authorizen By Law to issue a warrant of arrest setting forth essential facts Constituting an offense and alleging that the petitioner committed the offense, howevermore gave the same False Information to the Prosecutor Which lead Him to Believe probable cause existed where there wasn't NONE, (see wheeler, 734 F. 2d. at 260) also (McMillian v. Johnson, Cite as 878 F. Supp. 1473 (M.D.AlA. 1995)).

<u>Supporting Facts</u>: The Two Brothers along with the Detective's who filed the warrants after going Into a understanding or going Into an agreement among such witnesses for a statement in exchange of helping taking care of The witnesses misdemeanor warrants, (Constituted false charges of capital murder, A unlawful conviction from the use of evidence obtained pursuant to the unlawful arrest, and Custody pursuant to Section 2254; this Section governing the proceedings in the United States District Courts under Section 2254 of title 28, United States Code, as approved By the Judicial conference of the United States be and are, Prescribed pursuant To Section 2072 of title 28, united States Code and section 3771 and 3772 of title 18, united States Code.)

<u>Facts establishing Unlawful conviction</u>:

Witness Darria Wilson, and his Brother Eric Wilson, Caused the charges of Capital Murder on habeas corpus Petitioner giving The Statement that McCree Shot the Victim while the Victim was Inside his Car, as which Constituted Capital Murder (No) evidence shows that the victim were Shot

While Inside his vehicle, as which additional Gunshots were Fired From The Shooters Gun at the time the victim were In fact Shot while Standing By his vehicle, The victim only received one shot to the Rightside of his head, there was Not any Gunshots Found IN the inside of the victim's vehicle From the additional

Gunshots do to the victim were Standing oN the outside of his vehicle when were shot, the State's witness Could Not give these True Facts of the case do To Not having the Knowledge of what took place, the Brother's Eric Wilson, aNd

Darria Wilson, went to the Detective S.E. Wilson, the day after the Shooting seeking aN agreement Having Still Some of (No) Knowledge to the Case,

Fact: Darria wilson testified at McCree's trial aN Stated that he had No Knowledge of the case and Stated that He did Not See McCree

Shooting the victim As he Alleged, without due proess, Rights under the Fourteenth Amendment to the United States Constitution, The State Attorney Moved with A Trying of Leading witness Darria wilson upon giving A certain specific testimony to the Jury while Having knowLegde of The Detective's pressured wilson into implicating McCree so They could obtain custody of McCree In order to construct evidence against McCree on the capital murder charge, the State Attorney knew, or Should have known That The Capital Case was False and that there was No Factual Basis or No probable cause For Believing that McCree committed the crime, (See) McMilliAN, vs. JOHNSON, cite as 878 F. Supp. 1487 (M.D. Ala. 1995). . United States, v. LEON, 468 u.s. 897, 82 L. Ed 2d 677, 104 S Ct 3405. .

Petitioner Moves with Exhibit B
Trial transcript of the testimony
of the witness Darria Wilson,
And Moves hereIN seeking
Immediate or Speedier Release, or
The Judgment Being Attacked Be Vacated,.

## Exhibit B

The trial transcript of the Witness Darria
Wilson, Case # CC-02-235 Pages 453 through 464,

1     a witness, after having first been duly sworn to

2     speak the truth, the whole truth, and nothing but

3     the truth, took the stand and testified as

4     follows:

5                   **DIRECT EXAMINATION**

6     **BY MR. KIDD:**

7    Q.   Mr. Wilson, I'm going to stand all the way back

8     here, and if you'll speak loud enough that you

9     and I can carry on a normal conversation, I think

10     all the jurors will be able to hear you.  Okay?

11   A.   Okay.

12   Q.   If you could state your name for me, please?

13   A.   Darrell Jamar Wilson.

14   Q.   Mr. Wilson, where do you live?

15   A.   I live in Twin Gate on Luther Drive.

16   Q.   Okay.  And how long have you lived there on Twin

17     Gate?

18   A.   About twenty-seven years.

19   Q.   Okay.  And if you don't mind me asking, how old

20     are you?

21   A.   Thirty-nine.

22   Q.   So you've lived there most of your life; is that

23     correct?

24   A.   Yes, sir.

25   Q.   Now, are you familiar with the intersection of

1          Riviera Road and Gateway Drive?

2     A.    Yes, sir.

3     Q.    Okay.  And can you take a look at -- we're

4          looking at State's Exhibit Number 1 that's on the

5          monitor there.  Do you recognize that aerial

6          photograph?

7     A.    Yes, sir.

8     Q.    And does that look like an accurate

9          representation of the intersection of Riviera

10         Road and Gateway Drive?

11    A.    Yes, sir.

12    Q.    Now, I'm going to direct your attention back to

13         June the 20th of 2001.  Do you remember that

14         afternoon?

15    A.    Yes, sir.

16    Q.    During that time -- during that time, can you

17         tell me who was living at this house right here?

18    A.    The Robinsons.

19    Q.    And who else -- anybody else stay there with

20         them, the Robinsons?

21    A.    Yes.  Kids.

22    Q.    A bunch of kids.  About how many would stay there

23         on a given day?

24    A.    At the time I think it was probably three of

25         them.

1   Q.    Okay.  How old were they; do you know?

2   A.    No, I don't know.

3   Q.    Approximate age.  Were they older, grown,

4         teenagers; do you know?

5   A.    Well, a little -- a little mixed, grown and

6         teenagers.

7   Q.    Okay.  Now, on that particular day -- or let me

8         ask you this.  Looking at State's Exhibit Number

9         1, I want to give you the pointer here.  If you

10        mash that button right there, that will project a

11        laser image there.

12  A.    Okay.

13  Q.    If you would, take State's Exhibit Number 1 and

14        identify the house we were just talking about

15        where the Robinsons lived.  Can you do that for

16        me?

17  A.    That right there (indicating).

18  Q.    Can you show me the general area where your house

19        is at?  Is it in this picture?

20  A.    Yes, sir.  Mine's is right there (indicating).

21  Q.    Okay.  So this area right here?

22  A.    Yes, sir.

23  Q.    Is that a driveway?

24  A.    Yes, sir.

25  Q.    Okay.  Now, on the day of the 20th, did you

1       recall anything going on at this house that

2       afternoon?

3  A.  Well, at the time, it was just -- it was just the

4       regular old thing. Everybody was hanging around.

5       We was getting ready to go play a basketball

6       game. Then a little activity happened there.

7  Q.  Okay. Now, I apologize for interrupting. But

8       who was at your house with you?

9  A.  I had my basketball team. We was getting ready

10      to go play a basketball game.

11  Q.  And your basketball team, how old are the

12      individuals that --

13  A.  It was some fourteen to sixteen year olds.

14  Q.  Okay. And are you the coach?

15  A.  Yes, sir.

16  Q.  Okay. And what type of league were y'all playing

17      in?

18  A.  We was playing in our Y league, YMCA league.

19  Q.  How long have you been coaching those youth?

20  A.  Maybe about three or four years.

21  Q.  Okay. And approximately how many of them were

22      out there with you?

23  A.  Maybe about seven or eight of them.

24  Q.  Now, you said there was some activity going on

25      here at this house. What exactly do you recall

```
 1          happening?
 2    A.    When it started off, I just heard an argument,
 3          and that was it.  We was still loading up.  And
 4          later on, we just heard a shooting.
 5    Q.    Now, when you said you heard an argument, did you
 6          look down here and see anybody arguing?
 7    A.    Well, looking.  I went on back in the house, you
 8          know.  I didn't think nothing of it.
 9    Q.    Okay.  But who was arguing down here?  Who did
10          you see arguing?
11    A.    I didn't -- I can't say who I seen because when I
12          just looked down there, I just heard them
13          arguing.
14    Q.    Okay.  When you said they, could you tell if they
15          were male or female or what?
16    A.    At the time it just -- it didn't dawn on me.  I
17          just walked back on in the house.
18    Q.    Okay.  Now, prior to hearing this arguing,
19          did you see any dogs or any animals running
20          around in this area here?
21    A.    No, sir.  I heard a dog was mentioned in the
22          argument, but I didn't -- I didn't see no dogs.
23    Q.    You never saw a dog running around out here?
24    A.    I don't recall, no, sir.
25    Q.    Do you recall telling me earlier that you saw a
```

```
 1        dog --
 2              MR. DEBARDELABEN: ███████████████
 3              THE COURT:  Make sure you just ask him a
 4        question.  Disregard that.  Ask him another
 5        question.
 6   Q.   So you don't recall anything about a dog being
 7        around out there?
 8   A.   No.  I just heard argument about a dog.  I didn't
 9        see no dog.
10   Q.   Okay.  Now, you said that you were -- you didn't
11        really pay any -- this argument was going on and
12        you didn't pay it attention.  You said you heard
13        a shooting.  Tell me a little bit about that.
14   A.   Well, at the time I was in the house and I heard
15        something, pow pow.  And one of my guys came and
16        said, call the police, call the police.  So I
17        called the police, and I stepped back outside,
18        and that's when I seen the activity going on.
19   Q.   And when you stepped back outside, what did you
20        see?
21   A.   I just seen a car went over in the yard and
22        another person get in the car, and that's it.
23   Q.   Okay.  Now, the yard you're talking about, can
24        you show me where the car was at?
25   A.   All right.  At the time the car was right there,
```

```
 1              but it drove and went in the corner over there.
 2    Q.   Okay.  Now, do you know Gerard McCree?
 3    A.   Yes, sir.
 4    Q.   And you said you saw an individual go over and
 5              get into the car when it was in this area.  Who
 6              went over and got into the car?
 7    A.   Like I said, I just seen someone get in the car.
 8    Q.   Did you see Gerard McCree get in the car?
 9    A.   I just seen someone --
10              MR. DEBARDELABEN:                      he's already
11         answered that, and he is trying to elicit a
12         certain specific testimony out of him.
13              THE COURT:  Don't lead the witness,
14         Mr. Kidd.  Go on to something else.
15    Q.   Mr. Wilson, you said you called 9-1-1?
16    A.   Yes, sir.
17    Q.   And when did you call 9-1-1?
18    A.   After I heard the shooting.
19    Q.   Okay.  And did you have a conversation with the
20              9-1-1 operator?
21    A.   Yes.
22    Q.   Okay.  And you've actually had a chance to review
23              that transcript today; correct?
24    A.   Yes, sir.
25    Q.   And you've listened to that tape?
```

1    A.    Yes, sir.

2    Q.    Is that your voice on the tape?

3    A.    Yes, sir.

4    Q.    How long of a period of time are we talking about

5          from the time that you spoke to that 9-1-1

6          operator from when the time that this shooting

7          had occurred?   How much time had elapsed?

8    A.    I would say about thirty minutes.

9    Q.    About thirty minutes?

10   A.    Uh-huh.

11   Q.    Were you still excited about what had happened?

12   A.    Yes, sir.

13   Q.    Okay.   Does the 9-1-1 call that you've listened

14         to today, does it fairly and accurately represent

15         the conversation that you had with the 9-1-1

16         operator?

17   A.    Well, yeah, I guess so.

18   Q.    I mean, you can identify that's your voice;

19         correct?

20   A.    Yes, it sounds like my voice, yeah.

21             MR. KIDD:   Okay.   Judge, we'd offer State's

22         3 at this time.

23             THE COURT:   Any objection?

24             MR. DEBARDELABEN:   No objection.

25             THE COURT:   It's admitted.

1          (At which time State's Exhibit

2          Number 3 was admitted into

3          evidence.)

4      MR. KIDD:  Judge, permission to play it?

5      THE COURT:  Granted.

6          (At which time an audiotape, State's

7          Exhibit Number 3, was played.)

8   Q.   Mr. Wilson, you don't deny that's your voice on

9        the tape?

10  A.   No, I don't deny it.

11  Q.   Okay.  And did you or did you not see Gerard

12       McCree get into this car with the victim?

13  A.   No.  Like I said, I didn't.

14  Q.   Mr. Wilson, you said repetitively on that tape

15       that you didn't want to testify; you wanted to

16       keep your name out of this?

17  A.   Right.

18  Q.   Why is that?

19  A.   Because I don't want no trouble.

20  Q.   Okay.  Are you afraid to testify today?

21  A.   Well, I just did.  I mean, I did.

22       MR. KIDD:  I have no further questions, Your

23   Honor.

24       THE COURT:  Any questions, Mr. DeBardelaben?

25       MR. DEBARDELABEN:  Just one.

```
 1            THE COURT:  All right.

 2                    CROSS EXAMINATION

 3        BY MR. DEBARDELABEN:

 4    Q.    Mr. Wilson?

 5    A.    Yes, sir.

 6    Q.    This is the house you were in when you heard the

 7          shots; right?

 8    A.    Yes, sir.

 9    Q.    And do you understand from learning about this

10          shooting that it happened down here?

11    A.    Yes, sir.

12    Q.    You're inside this house and you hear the shots?

13    A.    Yes, sir.

14    Q.    And you do agree that there's trees obstructing

15          any view that someone might have had?  Do you see

16          these two trees?

17    A.    Yes, sir.

18    Q.    Are they still there?

19    A.    No, sir.

20    Q.    Somebody has cut them down?

21    A.    Yes, sir.

22    Q.    When did that happen?

23    A.    One of them is cut down.

24    Q.    Okay.

25            MR. DEBARDELABEN:  When did the State make
```

```
 1            this picture?
 2                 MR. KIDD:  Three weeks ago.
 3    Q.    Three weeks ago.  So one has been cut down since
 4          three weeks ago?
 5    A.    Yes, sir.
 6    Q.    Okay.  Did you know that Kenneth Cargill also
 7          hung around that house?
 8    A.    No, sir.
 9    Q.    Do you remember telling the police that there was
10          a lady that also witnessed -- supposedly was
11          across the street?
12    A.    Yes, sir.
13    Q.    Okay.  So that's not true?  Was that not true?
14    A.    That the lady witnessed?
15    Q.    Uh-huh.
16    A.    Yes, it's true.
17    Q.    Had you ever talked to anybody -- have you ever
18          talked to that person?
19    A.    No, sir.
20    Q.    Okay.
21    A.    Oh, no.  I'll rephrase that.  Yes, sir.
22    Q.    You've talked to that lady?
23    A.    Yes.  Well, she came and talked to me.
24    Q.    Okay.  Did she tell you she didn't see anything?
25                 MR. KIDD:  ▓▓▓▓▓▓▓▓
```

1       MR. DEBARDELABEN: Well, that's hearsay. I

2  apologize.

3  Q.  Now, how many members from your basketball team

4  were there with you?

5  A.  I would say about eight or nine of them was with

6  me.

7  Q.  Okay. They didn't see anything either?

8  A.  Well, I had all of them go to the back of the

9  house.

10  Q.  Were you back there with them or inside the

11  house?

12  A.  We was inside.

13  Q.  Thank you.

14       THE COURT: Any more questions?

15       MR. KIDD: Judge, I have no questions for

16  this witness. May he be excused?

17       THE COURT: Yes. Do you need to recall

18  Mr. Wilson, Mr. DeBardelaben, or can he be

19  excused?

20       MR. DEBARDELABEN: He can be excused, Your

21  Honor.

22       THE COURT: Thank you, Mr. Wilson. You can

23  step down.

24       Okay. Next witness, Mr. Kidd?

25       MR. GREEN: Your Honor, the State would call

Conviction obtained By the unconstitutional failure of the Prosecution to disclose To The Defendant evidence favorable To The Defendant :

Supporting facts, The facts establish That The Petitioner is innocent of The Crime For which He was convicted however the victim and the victim's Vehicle were taken By the Victim's Shooter, the victim were found By the Police the following Day after Being left in a area on said - Mitchell young Road, in montgomery County.

upon the victim Being found Shot to Death on said Mitchell young Road, fingerprints as well were found and the Inside of the victim's Vehicle these fingerprints were found on the "will" of the victim's vehicle IN The Inside, As this would Have Showed who Droved off with The victim, and the victim's Vehicle, The Name of the fingerprints were left undiscovered as they were giving to The Jury which petitioner were on trial For the said Causing the Death of Tarvis moore, as this

Improper influence In Fact Prejudiced
the petitioner upon the Prosecution
Failed to Disclose exculpatory evidence
to the defense of the petitioner, OR
were Using the fingerprints with the
intent to deprive the petitioner of
equal Protection of the Laws OR
Otherwise intended to Subject the
Petitioner to the denial of
Constitutional Rights, (see) Coogan, vs.
Wixom, 820 F. 2d. 170, 175 (CA6 1987),
McMillian v. Johnson cite as 878 F. Supp.
1509 (M.D. Ala. 1995).
however the influence took a Big
Implicit on the Jury's findings upon
Such unknown Fingerprints Found
In the Victim's vehicle, As leading
the Jury to Believe that the
fingerprints were the petitioner's
when the State Instructed the
Jury and alleged that the

Petitioner committed the offense, As It
the Ineffective Assistance of counsel
claim will Show IN the following of
this petition, The petitioner could Not Show
otherwise as the prejudiced influence
took on the hands of the petitione's
INNOCENT'S.. herein petitioner Seeks
Immediate oR Speedier Release
as the claim establish's petitioner
Is In custody Pursuant to 28 u.s.c. 2254


Gerard D. McCree
Petitioner

## Denial of effective assistance of Counsel,

under the courts holding in Strickland, 466 U.S. at 689, Counsel's conduct Must be considered within the context of the facts of the particular case and as of the time of the alleged misconduct." Ex parte Baldwin, 456 So. 2d 129, 134 (Ala. 1984). however the Petitioner herein facts shows itself from the trial court's findings, which the statement in the trial court's findings shall show actual proof that Petitioner's counsel failed to act properly.

FACT: the trial Court own Statement (Stating) The petitioner had ample opportunity Before and during trial to challenge both his arrest and any evidence used against him at trial, and The petitioner has not offered evidence to show he ever made any such challenge, therefore, the petitioner's claim is precluded as a claim that was raised, or could have been raised at trial. Ala. R. Crim. P. 32.2(a)(2-3).

Supporting facts of Petitioner: herein the Petitioner must correct the courts findings, supporting his claim, however The Record will show that petitioner were represented By counsel Before and during trial, any or all of the evidence favorable to the petitioner that were Not challenged

at trial Shall Show effective assistance of Counsel, Other than the failure of Petitioner By having the opportunity Before and during trial to Challenge, Supported With evidence favorable to him. however, Rule 32.2(a)(2-3) Should Not Support the trial Court's findings do to the fact that petitioner was represented By Counsel, the (Rule) will Show To Be Inconsistent once a Claim of effective assistance of Counsel has Been alleged In the first Petition (See) Rule 32.2(d) Ala. R. Crim. P...

The Counsel deficient performance at trial Subject the petitioner to prejudice, Being deprived of a fundamentally fair trial. With the evidence that were giving to the Petitioner Before trial By it's trial Counsel, Subject the trial Counsel to unprofessional erros, or Counsel misconduct", Ex parte Baldwin, 456 So. 2d 129, 134 (Ala. 1984), however upon (Evidence,) The Record was devoid of The evidence of promises gave to Witnesses In exchange for a Statement Implicating McCree. But for Counsel's deficien Performance the results of the

Proceedings Would Have Been different. Howard v. State, 551 So. 2d. 1155, 1158 (Ala. Crim. App. 1989) Petitioner's counsel was Ineffective and Petitioner were in fact Prejudiced By this alleged ineffective assistance.

Petitioner is in custody Pursuant To 28 U.S.C. 2254
Petitioner McCree Seeks the federal right to Be free from bad faith of the Prosecution,
Shaw vs. Garrison, 467 F. 2d 113.

The Conviction obtained By the unconstitutional failure of the Prosecution to disclose to the Defendant Evidence favorable to the Defendant:

the facts establish that Petitioner is innocent of the crime for which he was convicted, supporting facts, upon Being convicted for said - capital murder, and kidnapping, Robbery In The first degree,, the Records Shows (No) witnesses at trial giving a testimony statement, (Stating)

The Petitioner McCree got Inside the Victims Vehicle after Shooting the Victim while the Victim was Inside the Vehicle, which He got Into the Victim's Vehicle an drove off IN it while the Victim were Still Inside the Vehicle Committing the Kidnapping and Robbery As alleged By the State, however the State's case failed; Fact: the kidnapping and Robbery lacked witnesses of the Subject Matter,

Fact: (No) Witness testified that they IN fact Seen McCree run over and got INside the victim's vehicle and droved off with the victim In his car

Fact: the victim were shot on Riviera Rd. the Shooter got in the Victim's vehicle and Droved the victim To and wooded area off Mitchell young Road, after which the Shooter left the victim in the wooded area Shot To death, the Shooter left on foot And Were Seen By a Montgomery County Sheriff-who described the Subject in the area as a Said-Black Male Subject wearing a bib cap, a white t-shirt, And jeans. the Subject got away From Custody on foot.

Fact: the State added the Sheriff To The case File as witness To Identify McCree, at trial., this to didn't take Place at trial.

Fact: the State lack Subject Matter Because petitioner is innocent of the Crime for which He were Convicted, and Seek's Immediate or Speedier Release, Done this on the 2th day of June, 2006,

Herardo McCree
Petitioner

UNDER Rule 8, Subdivision (c). of Rules- Section 2254 Cases holding UNDER TOWNSEND vs. Sam, 372 U.S. 293 319, (1963): UPON Determining when a hearing IN The Federal habeas Proceeding IS MANDATORY, the appropriate Standard IS where facts are IN dispute, holding the question: IF the habeas applicant did NOT receive a full and fair evidentiary hearing IN the state court, either at the time of the trial, OR IN a Collateral proceeding.

As here the BURDEN IS on the Petitioner To Show Grounds that: He did NOT receive a hearing aT The Time of trial ON his Claims,

Petitioner were granted a evidentiary hearing IN The Rule 32. Proceeding. It were set For August 11, 2005,. UPON The Respondents Filing their Motion To Reconsider holding the hearing. the trial court granted the Respondents motion to Reconsider,. The petitioner did NOT receive It's evidentiary hearing, the petition were Than Dismissed without a hearing after Being appointed Counsels to represent the Petitioner IN The proceedings.

(f) In any post-conviction proceeding _J. Clay Benson, Jr.,_
_547 South Lawrence St. Mont. Al 36104_

(g) On appeal from any adverse ruling in a post-conviction proceeding: ____
_None_

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?
Yes (✓)    No ( )

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
Yes ( )    No (✓)

(a) If so, give name and location of court which imposed sentence to be served in the future: _____

(b) And give date and length of sentence to be served in the future: _____

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
Yes ( )    No ( )

Wherefore, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding.  _See The Attached Sheet on Next Page - - -_

_____
Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.  Executed on ___ _6/1/06_ _____.
(date)

_Gerard D. McCree, Jr.,_
Signature of Petitioner

Wherefore, The Petitioner prays That The Court grant petitioner relief To which he May Be entitled in this proceeding.

herein Petitioner Mccree Prays That The Court Grants Petitioner relief To which he May Be entitled upon a appropriate probable-cause determination, where By the Detective Affidavit for his Purpose of Securing the warrant against Mccree for Said Capital Murder, Submitted to The Montgomery County District Court OF ALABAMA, however the Affidavit did NOT State its True Findings In the Details supporting its probable cause For Securing The warrant, As it misled the Magistrate or Judge, By giving false Information in the Affidavit when knowing It was false, or would Have Known was false except for his reckless disregard of The Truth. (See) united States vs. Leon 468 us 891, 82 L ed 2d 677-681, 104 S ct, 3405

Petitioner has Submitted ExhiBit A, as it Show the True Fact to how the warrant Came about against Mccree, ExhiBit B were Submitted showing

The Detective Witness who caused
The warrant, upon false Information
Who came Fourth with the Truth at
Trial, as It to were recklessly
disregard of the truth, Petitioner should
Be entitled to an appropriate

Probable cause determination, Petitioner
Submites Exhibit C
Affidavit of Detective G. Naquin
Affidavit upon securing to warrant
against mccree, Petitioner Prays that
this court Grants Petitioner relief to
Which He May Be entitled.


Exhibit C
Following Next Page

Case# 01-13993

Warrant Log No.

**AFFIDAVIT**

2011-F 1006

## DISTRICT COURT OF MONTGOMERY ALABAMA

Complete following information on the OFFENSE and DEFENDANT/OFFENDER

Offense: Capital Murder

Defendant's Name: Gerard David McCree B/M          DOB: 04/04/78

Defendant's Address: 3814 Riviera Rd. Montg. Al

Date and Time of Offense: 06/20/01, 1810 hours

Place of Occurrence: 4400 block of Gateway Dr. Montg. Al

Person or Property Attacked: Tarvis Moore B/M

How Attacked: Shot to death

Damage Done or Property Attacked: damage to victim's vehicle

Value of Property: unknown

Details of Offense:

Co-Defendant(s): NONE

On the date and time listed the victim was seated inside his vehicle
when he was shot to death by the defendant with an unknown type hand-
gun.

This offense occured within the City of Montgomery, Montgomery County,
Al. in violation of 13A-05-40 of the Alabama Criminal Code, against
the peace and dignity of the state of Alabama.

I make this affidavit for the purpose of securing a warrant against
the said Gerard David McCree B/M          . I understand that I am
instituting a criminal proceeding and cannot drop this case. I
further understand that if any of the foregoing facts are untrue, I
may, in addition to any other punishment provided by law, be taxed
with court costs in this proceeding.

Sworn to and subscribed before me
this 21 day of JUNE     , 20 01 .

_____ Complainant

_____
Judge / Clerk - Magistrate

WITNESSES: (name, address, telephone number)

DET. G. Naquin    MPD          241-2831

22°