IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

_____

GERARD DAVID McCREE, #203 840  *

     Petitioner,  *

        v.  *        2:06-CV-520-WHA
                               (WO)

WARDEN JONES, *et al.*,  *

     Respondents.  *

_____


**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  INTRODUCTION AND PROCEDURAL HISTORY**

This cause is before the court on a 28 U.S.C. § 2254 petition for habeas corpus relief

filed on June 2, 2006 by Petitioner Gerard McCree.  Petitioner challenges his convictions on

three counts of capital murder[1] entered against him by the Circuit Court for Montgomery

County, Alabama, on September 17, 2003.  The trial court sentenced Petitioner to life

without the possibility of parole on each count after the jury recommended the death penalty

on a 10-2 vote.  (*Doc. No. 11, Exh. A, Vol. 9 of 9.*)

Petitioner filed a direct appeal of his convictions.  As his sole ground for relief

Petitioner challenged the trial court's decision to deny his motion for mistrial due to pretrial

_____

[1]  The jury found Petitioner guilty of murder with a deadly weapon while the victim was in
a vehicle, murder during a kidnapping, and murder during a robbery.  (*Doc. No. 11, Exh. A, Vol. 8
of 9.*)

publicity, claiming that the court's action constituted an abuse of discretion. During the pendency of the appeal, Petitioner filed a petition for writ of certiorari on June 19, 2004 with the Alabama Supreme Court. That court struck the certiorari petition on June 19, 2004 for its failure to comply with Rule 39(b)(3), *Alabama Rules of Appellate Procedure*. The appellate court affirmed Petitioner's convictions on August 20, 2004 and denied his application for rehearing on October 15, 2004. The appellate court issued a certificate of judgment on November 3, 2004. (*Doc. No. 11, Exhs. A-G.*)

Petitioner filed a Rule 32 petition in the trial court on January 20, 2004. He presented the following issues for review:[2]

> 1) his conviction was obtained through the prosecutor's failure to disclose favorable evidence to him:
>
> > a) the prosecutor and Willie Turner conspired to place Petitioner in prison by using falsified documents;
> >
> > b) the prosecutor used false statements obtained by Detective Wilson from Darria and Eric Wilson in order to charge and convict Petitioner of capital murder and Detective Wilson was able to obtain the false statements by promising to take care of two misdemeanor warrants belonging to Eric Wilson; and
> >
> > c) the State failed to disclose witnesses or turn over documentary evidence showing that a government witness gave false statements;

---

[2] Noting that the claims presented by Petitioner in his Rule 32 petition and amendments thereto were "rambling and confusing," the Alabama Court of Criminal Appeals discerned "as best [it could]," that the claims numbered one through six as set forth above were the Rule 32 claims presented by Petitioner. (*See Doc. No. 11, Exh. K at 2-3.*)

2

2) his conviction was obtained by use of evidence obtained pursuant to an unlawful arrest in which witnesses, detectives, and the prosecutor knowingly conspired to use false statements to charge him with capital murder;

3) his conviction and sentence should be vacated based on newly discovered material facts that Willie Turner gave false statements and James Thigpen gave statements inconsistent with facts that were known;

4) his conviction and sentence should be vacated based on newly discovered material facts that unknown fingerprints, not belonging to Petitioner, were found inside the victim's vehicle and the prosecution led the jury to believe that the fingerprints belonged to Petitioner when the State alleged that he had committed the offense;

5) trial counsel's performance was deficient; and

6) prosecutorial misconduct and pretrial publicity deprived Petitioner the right to be tried by a fair and impartial jury.

(*Doc. N. 11, Exh. H.*)   The trial court denied the post-conviction petition on August 1, 2005 in a written order.  (*Id.*) Petitioner appealed the trial court's order denying his petition for post-conviction relief.  (*Id.*)  The Alabama Court of Criminal Appeals affirmed the lower court's decision on April 15, 2006. (*Id. at Exh. K.*)   The appellate court determined:

On appeal, McCree continues to make rambling and confusing arguments, as he did in his petition and the amendments thereto, that he is entitled to relief because of the perjured testimony of Officer Willie Turner; that the State failed to turn over evidence favorable to McCree; that there was newly discovered evidence that the State knowingly used testimony that was false and inconsistent with the other statements made by that witness; that there was newly discovered evidence that fingerprints found inside the victim's vehicle did not belong to McCree; that his conviction was secured by evidence obtained pursuant to an unlawful arrest by way of a conspiracy between witnesses, the police detectives and the State; and that he received ineffective assistance of counsel.[1]  However, McCree's Rule 32 petition and the amendments thereto contain only bare allegations and conclusory statements. His petition provides no details regarding these allegations that would be sufficient to necessitate the circuit court conducting an evidentiary hearing on

his ineffective-assistance-of-counsel claim.  Furthermore, to the extent that any
of McCree's other claims may have survived the preclusion bars of Rule
32.2(a (2) - (5), Ala.R.Crim.P., we note that none of the claims met the
specificity requirements of Rule 32.6(b), Ala.R.Crim.P, and the pleading
requirements of Rule 32.3, Ala.R.Crim.P.  The circuit court properly denied
all of his claims without an evidentiary hearing.

FN1. Those claims that McCree raised in his [Rule 32] petition,
but does not pursue on appeal are deemed abandoned.  See,
e.g., Brownlee v. State, 666 So.2d 91, 93 (Ala. Crim. App. 1995)
("We will not review issues not listed and argued in brief.").

(*Id. at 5.*)  Petitioner's application for rehearing was overruled on May 5, 2006.  The

Alabama Supreme Court denied his petition for writ of certiorari on June 9, 2006  and a

certificate of judgment issued the same day.  (*Id., Exhs. L, M, N.*)

In the instant § 2254 petition Petitioner presents the following claims:[3]

1.  His capital murder convictions resulted from evidence obtained pursuant
to an unlawful arrest and illegal warrant;

2.  The evidence was insufficient to sustain his convictions for three counts of
capital murder;

3.  The State failed to disclose favorable evidence of "unknown" fingerprints
which were found inside the victim's car;

4. Trial counsel rendered a deficient performance for failing to question the
evidence obtained by arresting officers as a result of an agreement they
reached with witnesses to charge Petitioner with the murder and failed to
question the officers about their unlawful conduct; and

---

[3] Similar to the state appellate court's view regarding the clarity of Petitioner's pleadings,
the undersigned finds that the arguments filed in support of Petitioner's claims are, in large part,
presented in a rambling, disjointed, and stream of consciousness manner.  Accordingly, the court
reviews the briefs submitted by Petitioner in support of  his petition and his responses solely as
arguments made in support of the habeas issues as identified by the court herein.

4

5.  Petitioner was denied a full and fair evidentiary hearing in state court.

(*Doc. No. 1 at 6-47.*)

Respondents filed an answer in which they argue that Petitioner's Fourth Amendment claim is not subject to review in this federal habeas proceeding, as he had a full and fair opportunity to present the claim in state court.  *See Stone v. Powell*, 328 U.S. 465 (19 ).  Respondents maintain that the remaining claims were either properly adjudicated by the state courts or are procedurally defaulted.  (*Doc. No. 11*.)

Upon review of the § 2254 petition, the answer of Respondents and Petitioner's responses thereto, the court concludes that no evidentiary hearing is required and that the petition is due to be denied in accordance with the provisions of Rule 8(a), *Rules Governing Section 2254 Cases in United States District Courts*.

## II.  DISCUSSION

A.  *Fourth Amendment Violation*

Petitioner asserts that his convictions were obtained by use of evidence secured pursuant to an illegal arrest and that no probable cause for his arrest existed.  In support of this claim Petitioner argues that arresting officers entered into an agreement with witnesses whereby they would "take care of" the witnesses' misdemeanor warrants in exchange for statements from the witnesses implicating Petitioner in the crimes. Petitioner claims that after one of the witnesses (Darrell Wilson)[4] submitted a statement to police which implicated him,

---

[4]  Although Petitioner refers to this individual as "Darria," state court records identify him as "Darrell Wilson."   For purposes of this Recommendation, the court uses the same name referenced in the state court records.

law enforcement officials issued warrants for his arrest and he was subsequently arrested. Petitioner further appears to argue that evidence used against him at his trial was obtained from the illegal arrest.  (*Doc. No. 1*.)

Respondents maintain that *Stone v. Powell*, 428 U.S. 465 (1976) forecloses review of Petitioner's Fourth Amendment challenges in this federal habeas corpus proceeding.  (*Doc. No. 11 at 8*.)  The law is well established that federal courts are precluded from conducting post-conviction review of Fourth Amendment claims where state courts have provided "an opportunity for full and fair litigation" of those claims.  *Stone*, 428 U.S. at 494; *Bradley v. Nagle*, 212 F.3d 559, 564 (11th Cir. 2000). Under *Stone*, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  428 U.S. at 482.

Petitioner did not present his Fourth Amendment challenge on direct appeal. He did, however, present his illegal arrest claim in his Rule 32 proceedings, and on appeal the Alabama Court of Criminal Appeals denied relief. (*See Doc. No. 11, Exhs. E, K*.)  In order to circumvent the holding in *Stone*, Petitioner must show that he was denied the opportunity to present his Fourth Amendment claim before the state courts.

In this case, the record shows that Petitioner was afforded the opportunity in the state courts to litigate his Fourth Amendment challenge fully, fairly, and adequately.[5]  "If a state provides the processes whereby a defendant can obtain full and fair litigation of a Fourth Amendment claim, *Stone v. Powell*, bars federal habeas consideration of that claim whether or not the defendant employs those processes."  *Caver v. State of Alabama*, 577 F.2d 1188, 1192 (5th Cir. 1978); *see also Lucas v. Johnson,* 132 F.3d 1069, 1083 (5th Cir. 1989) (holding that claim that arrest was in violation of Fourth Amendment because it was not supported by probable cause and, therefore, the subsequent confessions were tainted failed to state a basis for federal habeas relief pursuant to *Stone v. Powell*).   Furthermore, the court notes that error, if any, in a state court's Fourth Amendment analysis or ruling does not provide a basis for federal habeas review.  *See Gilmore v. Marks*, 799 F.2d 51, 57 (3rd Cir. 1986) ("The Courts of Appeals . . . have consistently held that an erroneous determination of a habeas petitioner's Fourth Amendment claim does not overcome the *Stone v. Powell* bar.").

Based on the record, the court concludes that Petitioner had a full and fair opportunity to litigate his Fourth Amendment claims in the state courts. Hence, under *Stone*, the court may not review his substantive Fourth Amendment claims. *Id*. 428 U.S. at 494.  *See Peoples v. Campbell*, 377 F.3d 1208 , 1225(11th Cir. 2004) (quoting  *Stone*, 428 U.S. at 494); *Huynh*

---

[5]  In its order denying Petitioner's Rule 32 petition, the trial court stated that "Petitioner had ample opportunity before and during trial to challenge both his arrest and any evidence used against him at trial, and Petitioner has not offered evidence to show he ever made any such challenges." (*Doc. No. 11, Exh. H at 198.*)

7

*v. King*, 95 F.3d 1052, 1057-58 (11th Cir. 1996); *Morgan v. Estelle*, 588 F.2d 934, 940 (5th Cir. 1979).

*B. The Adjudicated Claim*s

   *i. Standard of Review*

   The Antiterrorism and Effective Death Penalty Act ["AEDPA'] amended the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state court convictions.  Under the AEDPA, when a state court has adjudicated a claim, to obtain federal habeas relief a petitioner must show that a decision by the Alabama state courts was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts, in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d)(1) & (2);[6] *see  Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

_____

   [6]  28 U.S.C. § 2254(d) provides that:

   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim adjudicated on the merits in State court proceedings unless the adjudication of the claim:

   (1)      resulted in a decision contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or

   (2)      resulted in a decision based on an unreasonable determination of the facts, in light of the evidence presented in the State court proceedings.

A state court's decision can be "contrary to" federal law either (1) if it fails to apply the correct controlling authority, or (2) if it applies the controlling authority to a case involving facts "materially indistinguishable" from those in a controlling case, but nonetheless reaches a different result. *Williams*. 529 U.S. at 405-06. A state court's decision can involve an "unreasonable application" of federal law if it either (1) correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Id*. at 407. "Federal habeas relief is available under the 'unreasonable application' standard only if the state court's application of clearly established federal law was 'objectively unreasonable.'" *Parker v. Head*, 244 F.3d 831 (11th Cir. 2001) (*citing Williams*, 529 U.S. at 409). It is the objective reasonableness, not the correctness *per se*, of the state court decision that this court must decide. *See Williams*, 529 U.S. at 411.

A responsible, thoughtful decision that is made after a full opportunity to litigate suffices, "even if it is wrong." *Lindh v. Murphy*, 96 F.3d 856, 876-77 (7th Cir. 1996), *rev'd on other grounds*, 521 U.S. 320 (1997). Further, a state court's determinations of fact shall be "presumed to be correct," and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "However, the statutory presumption of correctness applies only to findings of fact made by the state court, not to mixed determinations of law and fact." *Parker*, 244 F.3d at 835 (*citing McBride v. Sharpe*, 25 F.3d 962, 971 (11th Cir. 1994)).

9

*ii. Brady Violation*

Petitioner argues that the State failed to disclose the identity of fingerprints which were found inside the victim's car, including prints on the wheel of the vehicle. Petitioner maintains that this evidence would have identified who drove off with the victim after the shooting occurred. According to Petitioner, the State's failure to reveal the name of the person to whom the fingerprints belonged led the jury to believe that the fingerprints were his. (*Doc. No. 1 at 39-41.*)

In *Brady v. Maryland* , 373 U.S. 83,  87 (1963), the Supreme court mandated that prosecutors turn over exculpatory and impeachment evidence where such evidence is material either to guilt or punishment. *See, e.g., United States v. Bagley,* 473 U.S. 667, 676 (1985). "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene,* 527 U.S. 263, 281-82 (1999).

Evidence produced at trial reflected that latent fingerprints were obtained from the victim's car. These latent fingerprints were compared with Petitioner's fingerprints and the fingerprints of Kenneth Cargill.[7]   The evidence indicated that some of latent fingerprints taken from the victim's car were identified with Petitioner's known fingerprints. The evidence further indicated that there were other latent fingerprints obtained from the victim's

---

[7] Testimony at trial indicated that Cargill had been present at the scene of the crime and had observed Ms. Barnes and the victim arguing.  Cargill testified at Petitioner's trial. (*See Doc. No. 11, Exh. A, Vol. 7 of 9.*)

car which did not identify with Petitioner's fingerprints. None of the latent fingerprints taken from the victim's car identified with the known prints of Mr. Cargill.  (*Doc. No. 11, Exh. A, Vol. 7 of 9 at 601-610.*)

Here, Petitioner does not meet the first two components of the *Brady* test because his allegations do not show that the State suppressed evidence that was exculpatory or impeaching. The evidence introduced at trial revealed the existence of  latent fingerprints which identified with the known fingerprints of Petitioner as well as latent fingerprints for which no identifications were made. Petitioner fails to show, however, how the existence of additional unidentified  fingerprints  found inside the victim's car was either exculpatory or impeaching.  Further, Petitioner does not allege  that the prosecutor knew of any exculpatory or impeaching aspect to the alleged unknown fingerprints but only surmises that because the origin of some fingerprints remained unknown, this fact somehow improperly influenced the jury's verdict  resulting in prejudice to him.  (*See Doc. No. 1 at 39-40.*)

The Alabama Court of Criminal Appeals found no merit to Petitioner's *Brady* claim, holding that his claim presented only bare allegations and conclusory statements.  (*Doc. No. 11, Exh. K.*)  Upon its own independent review of the record, the court finds that  Petitioner has failed to establish that the state court's decision rejecting his challenge to the alleged failure to disclose and/or identify unknown fingerprints found inside the victim's car was contrary to the *Brady* standard or based on an unreasonable determination of the facts in light

11

of the evidence presented in the state court proceedings. *See* 28 U.S.C. § 2254(d). Thus,

Petitioner is not entitled to habeas relief on this claim.[8]

### iii. Ineffective Assistance of Counsel

To show a violation of his constitutional right to counsel, Petitioner must demonstrate

both that counsel's performance was below an objective and reasonable professional norm

and that he was prejudiced by this inadequacy. *Strickland v. Washington,* 466 U.S. 668, 686

(1984); *Williams,* 529 U.S. at 390.  In applying *Strickland,* the court may dispose of an

ineffective assistance claim if Petitioner fails to carry his burden on either of the two prongs.

*Strickland*, 466 U.S. at 697.

In assessing the performance of counsel, "a court must indulge a strong presumption

that counsel's conduct falls "within the wide range of reasonable professional assistance;

that is, [Petitioner] must overcome the presumption that, under the circumstances, the

─────────────

[8]  The court notes that Petitioner makes an actual innocence argument with regard to his fingerprint claim ,alleging that testimony at trial reflecting the existence of unidentified fingerprints on the wheel of the car constitute newly discovered material facts which demonstrate his actual innocence. Notwithstanding that this contention does not, in fact, present a claim of  newly discovered evidence, the court notes that claims based upon newly discovered evidence which bear only upon the guilt or innocence of the petitioner do not justify habeas corpus relief. As the Supreme Court explained in *Herrera v. Collins,* 506 U.S. 390, 400 (1993):

> Claims of actual innocence based on newly discovered evidence have
> never been held to state a ground for federal habeas relief absent
> an independent constitutional violation occurring in the underlying
> state criminal proceedings.... This rule is grounded in the principle that
> federal habeas courts sit to ensure that individuals are not imprisoned
> In violation of the Constitution-not to correct errors of fact.

In *Brownlee v. Haley,* 306 F.3d 1043, 1065 (11th Cir. 2002), the Eleventh Circuit, relying on *Herrera*, held that even if a petitioner presents a credible claim of actual innocence, such a claim does not entitle him to federal habeas relief.

challenged action 'might be considered sound trial strategy.' " *Strickland*, 466 U.S. at 689 (citation omitted); *see also Dingle v. Secretary for Dept. of Corrections,* 480 F.3d 1092, 1099 (11th Cir. 2007).  Counsel's conduct must be evaluated from the perspective of the time the relevant decision was made and without the distortion of hindsight.  *Strickland*, 466 U.S. at 689. *See Lancaster v. Newsome,* 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation").

With regard to the prejudice requirement, Petitioner must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland,* 466 U.S. at 694.  Focusing solely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." *Lockhart v. Fretwell,* 506 U.S. 364, 369-70 (1993). Petitioner, therefore, must establish "that counsel's errors were so serious as to deprive [him] of a fair trial, a trial whose result is reliable." *Id.*  at 369 (quoting *Strickland,* 466 U.S. at 687).  "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.' " *Dingle,* 480 F.3d at 1099 (quoting *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)).

Petitioner complains that counsel's deficient performance at trial prejudiced him. Petitioner appears to argue that trial counsel failed to produce evidence of promises made to witnesses by law enforcement officials in exchange for statements from the witnesses which

implicated Petitioner. Petitioner maintains that, but for counsel's deficient performance in this regard, the result of his trial would have been different.  (*Doc. No. 1 at 42-44*.)

To establish ineffective assistance, Petitioner must provide factual support for his contentions regarding counsel's performance.  *See Smith v. White,* 815 F.2d 1401, 1406-07 (11th Cir. 1987). Petitioner's bare and conclusory allegation that trial counsel rendered an unreasonable performance because they failed to make a particular argument, without more, is simply insufficient to satisfy the *Strickland* standard.  *See Wilson v. United States,* 962 F.2d 996, 998 (11th Cir. 1992); *Tejada v. Dugger,* 941 F.2d 1551, 1559 (11th Cir. 1991); *United States v. Jones*, 614 F.2d 80, 82 (5th Cir. 1980) (conclusory statements are insufficient to establish a constitutional violation.)[9]

Here, Petitioner has the burden of providing specific information as to the evidence which could have been obtained concerning the alleged witness statements and of demonstrating whether such testimony would have produced a different result.  He has failed to make the necessary factual showing.  The record in this case shows that the jury heard testimony from numerous witnesses. Petitioner also testified.  He fails to indicate what significant evidence purportedly was not elicited during trial which was or could have been obtained through direct and cross examination of the witnesses during the trial.   Rather, Petitioner's assertion in this regard is no more than a conclusory allegation challenging trial counsels' performance.  He presents no factual evidence to demonstrate that in the absence

---

[9] *See Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*) (adopting as binding precedent all decisions of the former Fifth Circuit announced prior to October 1, 1981).

of trial counsels' alleged shortcoming, the outcome of his trial would have been different.

Petitioner's mere conclusory allegations are insufficient to compel a finding that trial counsel

was ineffective for failing to elicit the evidence in question.  *See Strickland*, 466 U.S. at 694.

*See generally Fortenberry v. Haley,* 297 F.3d 1213, 1228 (11th Cir. 2002)  "[T]he absence

of exculpatory witness testimony from a defense is more likely prejudicial when a conviction

is based on little record evidence of guilt.").   Moreover, counsels' conduct is properly

considered as one of the myriad tactical decisions that trial counsel makes during the course

of representing a defendant and which are entitled to substantial deference on collateral

review.  *Strickland*, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be

highly deferential . . . a court must indulge a strong presumption that counsel's conduct falls

within the wide range of reasonable professional assistance; that is, the defendant must

overcome the presumption that the challenged action might be considered sound trial

strategy.") (citations omitted).

Upon its own independent review of the record, the court finds that  Petitioner has

failed to establish that the state court's decision rejecting his challenges to trial counsels'

performance was contrary to the *Strickland* standard or based on an unreasonable

determination of the facts in light of the evidence presented in the state court proceedings.

*See* 28 U.S.C. § 2254(d). Thus, Petitioner is not entitled to habeas relief on this claim.

*iv. Sufficiency of the Evidence*

Petitioner alleges that there was insufficient evidence produced at trial to find him

guilty on three counts of capital murder.   He argues that because there was a lack of  witness

testimony indicating that he (1) got inside the victim's car after the victim was shot, (2) drove away with the victim still inside the car, (3) left the victim in a wooded area, and (4) departed the scene on foot. He contends that the absence of such testimony establishes that he is innocent of his convictions. (*Doc. No. 1 at 6, 45-46.*)  The Due Process Clause of the Fourteenth Amendment prohibits a criminal conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime." *In re Winship,* 397 U.S. 358, 364 (1970). Under § 2254 , habeas relief  on a claim of insufficient evidence is appropriate only "if it is found that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *see also Lewis v. Jeffers*, 497 U.S. 764, 781 (1990).

> But this inquiry does not require a court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." ... [I]nstead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Jackson,* 443 U.S. at 318-319.  To be sufficient, the "evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt."  *United States v. Harrell*, 737 F.2d 971, 979  (11th Cir.1984).  Sufficiency claims are judged by the elements defined by state law.  *Jackson,* 443 U.S. at 324 n.16.

Section 13A-5-40, Ala. Code 1975 provides, in pertinent part:

(a) The following are capital offenses:

> (1) Murder by the defendant during a kidnapping in the first degree or an attempt thereof committed by the defendant.

(2) Murder by the defendant during a robbery in the first degree
or an attempt thereof committed by the defendant.

\*\*\*

17) Murder committed by or through the use of a deadly weapon
while the victim is in a vehicle.

Notwithstanding the lack of testimony about which Petitioner complains, there was ample evidence from which a reasonable jury could infer that Petitioner murdered, kidnapped, and robbed the victim in this case. Eighteen witnesses testified at the trial, including Petitioner. Testimony at trial reflected that the victim had been romantically involved with a woman named Linda Barnes but, at the time of the victim's demise, the relationship had been on the decline for several weeks. On the day of the crimes (June 20, 2001), the victim had returned home from work and found Ms. Barnes and his puppies gone. The victim went searching for his pets and ended up at Petitioner's home.[10] He found Ms. Barnes in her car at that location and an argument between the two quickly ensued. Petitioner and the victim then got into an argument. Ms. Barnes testified that as the two men were arguing she observed Petitioner "c[o]me up with a gun" and "it was just shot, pow, pow." Ms. Barnes further affirmatively indicated that there was no doubt in her mind that Petitioner was the person she saw with a gun and that the sound of gunfire came from Petitioner's shooting the gun. She testified that she observed Petitioner running toward the victim's car after she heard shots. After hearing the shots, Ms. Barnes drove away from the

---

[10] Petitioner and Ms. Barnes both testified that they were not romantically involved but agreed that they had engaged in various social activities together for several weeks prior to the victim's murder. (*Doc. No. 11, Exh. A, Vol. 6 and 7 of 9.*)

area but then circled back around to the vicinity, at which time the only thing she saw was a dog in the middle of the road.  (*Doc. No. 11, Exh. A, Vol. 6 of 9.*)

Darrell Wilson, one of Petitioner's neighbors, testified at trial. He testified that he had also observed Petitioner arguing with the victim shortly before the victim was shot. Mr. Wilson testified that he went inside his home as the two men were arguing and subsequently heard gunshots ("pow, pow"). After calling the police, Mr. Wilson went back outside, and he observed  a "car over in a yard and another person get in the car." (*Doc. No. 11, Exh. A, Vol. 7 of 9.*)

Testimony by a forensic expert indicated that in addition to several unidentified fingerprints from the victim's car, there was a latent fingerprint lifted from outside  the driver's side door of the victim's car which identified with Petitioner's known fingerprints. There was also testimony from the medical examiner who performed the victim's autopsy. Her testimony indicated that the gunshot wound to the victim's head likely caused immediate unconsciousness but that his death likely occurred at a subsequent time as a result of brain swelling caused from the gunshot wound.  The medical examiner's testimony indicated that abrasions ("road rash") on the victim's torso were probably caused by the victim's being dragged across a hard surface and the appearance of the abrasions indicated that they occurred antemortem. (*Doc. No. 11, Exh. A, Vols. 6 & 7 of 9.*)

Petitioner testified that he was down the street from his house talking to Kenneth Cargill at the time the victim drove up in front of his (Petitioner's) home.  Petitioner's testimony indicated that shortly before then he had been talking to Ms. Barnes. When he

18

observed Cargill beginning to drive off in his car, he ran after Cargill and flagged him down because he had left his cell phone in Cargill's vehicle.  Further testimony from Petitioner indicated that as he conversed with Cargill, he observed the victim (whom Petitioner testified he did not know personally and had never seen, although he had heard of him),[11] arguing with another individual identified by Petitioner as "Little Mike."[12] Shortly before the shooting occurred, Petitioner's testimony indicates that he observed the victim standing beside the driver's side of his car and saw him pull out a gun as he continued arguing with "Little Mike."  Petitioner testified that he heard shots fired,  saw the victim get back in his car, and then saw the car pull away, then go in the yard where it stopped.  Although "Little Mike" was with a group of eight guys on the porch of a house, Petitioner testified that he was able to identify him as the shooter because "he ran across the street and got in the car." (*Doc. No. 11, Exh. A, Vol. 7 of 9.*)

Kenneth Cargill's testimony corroborated Petitioner's testimony that they had been close friends for several years. Cargill testified that on June 20, 2001, he was in a home close to Petitioner's house playing a game of dice with Petitioner and another individual. Cargill stated that he subsequently left the house and walked to his car alone.  He testified that after he got in his vehicle, which was parked directly in front of Ms. Barnes' car,  he observed the

---

[11]  Petitioner testified that he had been in the victim's home several times with Ms. Barnes, where he drank beer.  Petitioner also stated that he had been in both Ms. Barnes' and the victim's vehicles.  (*Doc. No. 11, Exh. A, Vol. 7 of 9.*)

[12]  Petitioner testified that he gave information about "Little Mike" to his attorneys.  Law enforcement officials were also provided this information but trial testimony indicated that they were unable to locate any person by that name.  (*Doc. No. 11, Exh. A, Vol. 7 of 9.*)

victim drive up beside her car and begin  arguing with her. Cargill indicated that Petitioner was "standing in the yard" as Ms. Barnes and the victim argued.  Cargill testified that he pulled away from the curb when he saw Ms. Barnes place her car in gear because he did not want her to run into his vehicle. Cargill testified that when he drove off the victim was still standing beside Ms. Barnes' car.  (*Doc. No. 11, Exh. A, Vol. 7 at 9.*)

A federal habeas court does not make an independent determination regarding whether the evidence demonstrates guilt beyond a reasonable doubt. *Jackson,* 443 U.S. at 318-19. Where the evidence of record supports conflicting inferences, the court must presume that the jury resolved such conflicts in favor of the prosecution, and the court defers to the jury's judgment as to the weight and credibility of the evidence. *See Wilcox v. Ford,* 813 F.2d 1140, 1143 (11th Cir. 1987). "The simple fact that the evidence gives some support to the defendant's theory of innocence does not warrant the grant of habeas relief." *Conklin v. Schofield,* 366 F.3d 1191, 1200 (11th Cir. 2004). While Petitioner may have issues with a certain lack of testimony or evidence in regard to various matters as well as issues with the credibility of witness testimony, this court is required to defer to the jury's credibility determinations and weighing of the evidence. *Jackson,* 443 U.S. at 326, 99 S.Ct. 2781; *Wilcox,* 813 F.2d at 1143. In this case, counsel had ample opportunity to examine and cross-examine the witnesses who testified at trial, which included the questioning of witnesses whom Petitioner claims gave trial testimony that was inconsistent with prior statements made to law enforcement officials. Further, the jury heard Petitioner's own account of events on the day in question.

Here, the court finds that necessarily underlying the state court decisions was a determination that the evidence was sufficient to uphold Petitioner's convictions on three counts of capital murder, a standard identical to federal sufficiency review.  (*See Doc. No. 11, Exhs. H, K.*)  *See Wright v. Sec'y for Dep't of Corr.*, 278 F.3d 1245, 1255-56 (11th Cir. 2002) (a state court decision "that does not rest on procedural grounds alone is an adjudication on the merits, regardless of the form in which it is expressed."). Thus, the court must deny habeas relief unless one of the two exceptions found in § 2254(d)  applies.  *See Mobley v. Head*, 267 F.3d 1312, 1316 (11th Cir. 2001).  Having independently reviewed the record, the arguments presented by the parties, applicable statutes, and controlling case law, the undersigned finds that Petitioner has not met his burden in this regard.  Because the state court's decision was neither contrary to nor an unreasonable application of federal law, Petitioner is not entitled to habeas relief on his sufficiency of the evidence claim.

### v.  The Evidentiary Hearing Claim

Petitioner argues that he was entitled to an evidentiary hearing on his Rule 32 petition. The Alabama Court of Criminal Appeals denied relief on this claim. It concluded that Petitioner's Rule 32 petition contained only bare allegations and  conclusory statements and lacked sufficient detail and, therefore, the trial court did not err in concluding that an evidentiary hearing on the petition was not warranted.   (*Doc. No. 11, Exh. K at 4-5.*)

A federal court is to entertain an application for a writ of habeas corpus only on the ground that the petitioner is in custody in violation of the constitution or laws or treaties of the United States. 28 U.S.C. § 2254. Demonstration of a violation of the Constitution is

21

necessary before a federal court may entertain a petition for writ of habeas corpus. *Clarke v. State of Florida,* 648 F. Supp. 307 (S.D. Fla.1986). A federal court is not concerned with violations of state law unless the violation raises federal constitutional problems. *Wilcox v. Ford,* 813 F.2d 1140, 1145 n. 7 (11th Cir. 1987). A state's interpretation of its own laws and rules provides no basis for federal habeas corpus relief. *Beverly v. Jones,* 854 F.2d 412 (11th Cir. 1988).

The instant claim for relief raises an issue concerning a State's interpretation of its own rules and procedures.  It, therefore, provides no basis for federal habeas corpus relief since no question of a constitutional nature is involved. *See Spradley v. Dugger,* 825 F.2d 1566, 1568 (11th Cir. 1987) (*per curiam*) (concluding § 2254 claim that petitioner's due process rights were violated when state post-conviction court held no evidentiary hearing and failed to attach appropriate portions of record to its opinion "goes to issues unrelated to the cause of petitioner's detention [and] does not state a basis for habeas relief"); *Bronstein v. Wainwright,* 646 F.2d 1048, 1050 (5th Cir. Unit B, June 1981).

## III.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the petition for habeas corpus relief filed by Petitioner Gerard McCree be DENIED and DISMISSED with prejudice.

 It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before **February 11, 2009**. Any objections filed must specifically

identify the findings in the Magistrate Judge's Recommendation to which a party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done, this 29th day of January, 2009.


/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE

23